Kennedy, J.
{¶ 1} In this appeal from the Sixth District Court of Appeals, we consider whether appellee, Ohio Department of Natural Resources, Division of Wildlife (“ODNR”), has the authority to seek, pursuant to R.C. 1531.201(B), the recovery of the civil restitution value of an antlered white-tailed deer taken in violation of R.C. Chapter 1533 when ODNR had seized parts of the deer as evidence during *279 the criminal investigation and those parts had been subsequently forfeited to ODNR in the criminal action. Appellant, Arlie Risner, advances the following proposition of law: “Pursuant to R.C. 1531.201(B), ODNR cannot take possession of and seek the restitution value of an antlered white-tailed deer taken in violation of R.C. Chapter 1533.”
{¶ 2} For the reasons that follow, R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though it had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of those items as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. We affirm the judgment of the court of appeals.
I. Facts and Procedural History
{¶ 3} In November 2010, ODNR wildlife officers began investigating a complaint that Risner was hunting on CSX Railway property without written permission. During the investigation, the wildlife officers discovered a tree stand, deer entrails and organs, and a blood trail on CSX property. Samples of the organs and blood were taken as evidence. As part of the investigation, the wildlife officers seized a set of deer antlers from a taxidermist and deer meat from a butcher, both of which had been brought in by Risner. The wildlife officers also paid the butcher $90 for the remaining amount owed for the deer-processing fee.
{¶ 4} The wildlife officers took the antlers to be measured. The official score was 228 6/8 inches, which is considered to be an extraordinarily large and unusual deer in Ohio.
{¶ 5} Blood and organ samples, along with samples of the processed meat and tissue collected from the antler skull plate, were sent to a lab for DNA testing. Testing confirmed that all the samples came from one white-tailed deer.
{¶ 6} In January 2011, Risner was charged with hunting without permission, a violation of R.C. 1533.17. The next month, he pled no contest. The court found Risner guilty and imposed a $200 fine, restitution of $90 to ODNR for the deer-processing fee, and court costs of $55. The court also ordered the meat forfeited to ODNR and suspended Risner’s Ohio hunting license for one year. A few months later, the court ordered the antlers forfeited to ODNR pursuant to R.C. 2981.12.
*280 {¶ 7} In an April 2011 letter, ODNR notified Risner that because of his conviction, he owed $27,851.33 in restitution to the state pursuant to R.C. 1531.201. ODNR further informed Risner that his Ohio hunting license was immediately revoked and he would not be able to obtain another license until restitution was made in full.
{¶ 8} In May 2012, Risner filed a declaratory-judgment action against ODNR. He alleged that an order of restitution under R.C. 1531.201 was illegal and unconstitutional because the state had taken possession of the deer, in lieu of restitution, in the criminal proceeding. ODNR filed a counterclaim under R.C. 1531.201 to recover the restitution value of the deer. The trial court, without addressing Risner’s constitutional claims, concluded that the plain language of R.C. 1531.201 prevented ODNR from seeking restitution for the deer after ODNR had been awarded possession of the deer and antlers in prior proceedings.
{¶ 9} ODNR appealed the trial court’s decision to the Sixth District Court of Appeals. The Sixth District held that the plain meaning of R.C. 1531.201 did not “restrict ODNR from bringing a civil action to recover the restitution value if wildlife officers ha[d] already seized parts of the wild animal.” 2013-Ohio-5902, 8 N.E.3d 330, ¶ 21 (6th Disk). The court reversed the trial court’s judgment and remanded for the trial court to address the constitutional questions raised in Risner’s motion for summary judgment. Risner then appealed to this court.
II. Law and Analysis
{¶ 10} Risner contends that the plain language of R.C. 1531.201(B) permits ODNR to seek either possession of the deer Risner had killed or restitution for the deer. But, Risner contends, it may not seek both. Risner asserts that ODNR is barred from seeking restitution for the deer because it had already taken possession of the deer by seizing the antlers and meat during the criminal investigation and obtaining an order of forfeiture for those items at the conclusion of the criminal action.
{¶ 11} In response, ODNR contends that the restitution imposed upon Risner was mandatory under R.C. 1531.201(C) and that its attempt to recover restitution is not affected by an order imposed in a criminal proceeding. ODNR further states that an examination of the language of R.C. 1531.201 permits it to recover both the poached animal and the restitution value of the animal. Finally, ODNR asserts that the legislature intended R.C. 1531.201 to be expansive and that restitution is a deterrent to poaching.
{¶ 12} When interpreting a statute, a court’s paramount concern is legislative intent. State ex rel. United States Steel Corp. v. Zaleski, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. “[T]he intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and *281 doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation.” Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. We apply the statute as written, Boley v. Goodyear Tire & Rubber Co., 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20, and we refrain from adding or deleting words when the statute’s meaning is clear and unambiguous, Armstrong v. John R. Jurgensen Co., 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12. However, “[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.” State v. Wilson, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). See also R.C. 1.42.
{¶ 13} R.C. 1531.201 states:
(B) The * * * division of wildlife * * * may bring a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold, or possessed in violation of this chapter or Chapter 1533. of the Revised Code or any division rule against any person who held, took, bought, sold, or possessed the wild animal.
(C) (1) In addition to any restitution value established in division rule, a person who is convicted of a violation of this chapter or Chapter 1533. of the Revised Code or a division rule governing the holding, taking, buying, sale, or possession of an antlered white-tailed deer with a gross score of more than one hundred twenty-five inches also shall pay an additional restitution value * * *.
* * *
(D) Upon conviction of holding, taking, buying, selling, or possessing a wild animal in violation of this chapter or Chapter 1533. of the Revised Code, or a division rule, the chief shall revoke until payment of the restitution value is made each hunting license * * * issued to that person under this chapter or Chapter 1533 of the Revised Code.
* * *
(E) Nothing in this section affects the right of seizure under any other section of the Revised Code.
{¶ 14} R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. R.C. 1531.201(B) states that ODNR may “recover possession of or the restitution value of any wild animal” in the civil action that ODNR is authorized to file against an individual who has violated R.C. Chapter 1531 or *282 1533 or any division rule. There is no language qualifying ODNR’s authority to recover possession of the animal or its civil restitution value upon whether either had been previously awarded to ODNR in a related criminal proceeding. Rather, the only condition in R.C. 1531.201(B) for ODNR to bring a civil action is that there must have been a violation of R.C. Chapters 1531 or 1533 or a division rule.
{¶ 15} Both Risner’s and the dissent’s interpretation of R.C. 1531.201(B) would require the deletion of the words “bring a civil action to” from the statute, thereby preventing ODNR from taking possession of or recovering the restitution value of an animal in a civil action, and the insertion of language permitting an award in a related criminal action to be considered. But this court must give effect to the words used. Cleveland Elec. Illum. Co. v. Cleveland, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988).
{¶ 16} Our interpretation of R.C. 1531.201(B) is supported by R.C. 1531.201(C) and (D), which are mandatory, self-executing provisions. R.C. 1531.201(C) states that a person convicted of a violation involving an antlered white-tailed deer with a gross score over 125 inches “shall pay an additional restitution value.” And R.C. 1531.201(D) states that upon a conviction involving a wild animal in violation of R.C. Chapter 1531 or 1533 or a division rule, ODNR “shall revoke” the offender’s hunting license until restitution is paid. We have held that “shall” is to be “ ‘interpreted to make mandatory the provision in which it is contained, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning.’ ” State v. Palmer, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 19, quoting Lakewood v. Papadelis, 32 Ohio St.3d 1, 3-4, 511 N.E.2d 1138 (1987). R.C. 1531.201 does not contain a clear and unequivocal intent that “shall” in subsections (C) and (D) means anything other than “must.” Accordingly, ODNR does not have discretion not to impose the additional civil restitution required by R.C. 1531.201(C) or not to revoke a hunting license as required by R.C. 1531.201(D). Contrary to the dissent’s assertion, these are the only actions mandated by R.C. 1531.201; recovering possession of the animal is not mandated by R.C. 1531.201.
{¶ 17} Additionally, it is the violation of R.C. Chapter 1531 or 1533 or a division rule — and only the violation — that triggers the mandatory duties in R.C. 1531.201(C) and (D). The construction advanced by Risner would render meaningless these unequivocal mandates imposed upon ODNR by the legislature. We have repeatedly stated that a construction that renders a provision superfluous, meaningless, or inoperative should be avoided. Boley, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, at ¶ 21.
{¶ 18} Last, in R.C. 1531.201(E), the legislature has specifically stated that R.C. 1531.201 does not affect the “right of seizure under any other section of the Revised Code.” E.g., R.C. 1531.13 (authorizing law-enforcement and wildlife *283 officers to seize a “wild animal or any part of a wild animal taken or had in possession contrary to law or division rule”). “Any” means “all.” Webster’s Third New International Dictionary 97 (2002). Because R.C. 1531.201(E) “is phrased in broad, sweeping language, we must accord it broad, sweeping application.” State ex rel. Mager v. State Teachers Retirement Sys. of Ohio, 123 Ohio St.3d 195, 2009-Ohio-4908, 915 N.E.2d 320, ¶ 16. The legislature did not limit the options for enforcing wildlife laws. To read R.C. 1531.201(B) as requiring ODNR to choose between possession or civil restitution affects the state’s “right of seizure” and is contrary to the legislature’s express intent.
{¶ 19} Accordingly, reading the statute as a whole, R.C. 1531.201 operates by its clear terms as follows: upon a conviction in violation of R.C. Chapter 1531 or 1533 or division rule involving a white-tailed deer with a gross score of more than 125 inches, ODNR is required to recover civil restitution from the offender, see R.C. 1531.201(C), and revoke the offender’s hunting license until payment of the restitution value is made, see R.C. 1531.201(D). ODNR has no discretion with respect to either civil restitution or revocation of the license. In the event the offender does not pay the restitution value in order to regain the hunting license, R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though ODNR had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule.
{¶ 20} Further, if R.C. 1531.201 were ambiguous, we would be able to determine the General Assembly’s intent by looking to the statutory language, the circumstances in which the statute was enacted, legislative history, and the consequences of a particular construction. Sheet Metal Workers’ Internatl. Assn., Local Union No. 33 v. Gene’s Refrigeration, Heating & Air Conditioning, Inc., 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 29.
{¶ 21} In 2008, subsections (C) and (D) were added to R.C. 1531.201. 2007 Am.H.B. No. 238. Testimony presented in support of these amendments discussed the problem Ohio faces from poachers and argued for a greater deterrence to poaching.
Poachers don’t take just one animal. There have been numerous cases in recent years involving multiple deer, turkeys, small game and sometimes endangered species for which there is no legal hunting season. Ohio’s laws regarding fines and restitution for wildlife violations have not been updated in years and in many cases are so low that poachers consider them a “cost of doing business.” HB 238 would change that and make poachers take our wildlife laws seriously.
*284 Wild Animals-Restitution Value: Hearing on 2007 Am.H.B. No. 238 Before the S. Environment & Natural Resources Comm., 127th Gen. Assem. (Oct. 10, 2007) (statement of Larry Mitchell).
{¶ 22} Dave Graham, then the chief of the Division of Wildlife at ODNR, also testified:
The * * * restitution value for a whitetail deer is $400. Having researched common prices for taking a trophy buck in a hunting preserve we found that a 190-class buck costs about $15,000. If a poacher takes an animal in this class currently it is a first degree misdemeanor with a penalty which could be between $0 and $500, jail time up to 60 days, and a civil penalty of up to $400 — all at the judge’s discretion. It is not uncommon in some jurisdictions for fines to be $100 or less, jail time nonexistent and restitution negligible. The bottom line is that current penalties and restitution are not a deterrent to poaching.
Wild Animals-Restitution Value, Hearing on 2007 Am.H.B. No. 238 Before the H. Agriculture & Natural Resources Comm., 127th Gen. Assem. (June 13, 2007) (statement of Dave Graham, Chief, Div. of Wildlife).
{¶ 23} It is evident from these excerpts that the legislative intent in enacting R.C. 1531.201 is to preserve Ohio’s wildlife for legitimate hunters and naturalists and to provide a significant deterrent to those individuals who seek to harm the state’s aesthetic, economic, and recreational interests. Risner’s construction eviscerates this purpose. Requiring ODNR to choose between possession of the deer’s remains and restitution when a white-tailed deer of this caliber is poached removes all deterrent effect and allows the “cost of doing business” mindset to prevail. In fact, Graham’s concerns are illustrated by the minimal criminal penalties that were imposed upon Risner.
{¶ 24} Finally, we would then need to read R.C. 1531.201 in pari materia with the other statutes contained in R.C. Chapter 1531 that relate to the same subject matter “to discover and carry out legislative intent.” Sheet Metal Workers’ Internatl. Assn., 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, at ¶ 38; see generally id. at ¶ 33-38 (reading R.C. 4115.05 in the context of the entire prevailing-wage statutory scheme and related regulations). R.C. 1531.02 declares that the state holds the title to wild animals in trust for the benefit of the people of the state of Ohio and that a person may hunt a wild animal only in a manner prescribed by the Revised Code or division rule. Moreover, R.C. 1531.13 authorizes law-enforcement officials to seize “a wild animal or any part of a wild animal taken or had in possession contrary to law or division rule.” Reading R.C. *285 1531.201(B) in pari materia with R.C. 1531.02 and 1531.13, we would conclude that pursuant to R.C. 1531.201(B), ODNR has the authority to file a civil action to recover civil restitution for the deer notwithstanding ODNR having been awarded possession of the deer’s remains as a result of a criminal conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. To find otherwise would strip ODNR of the authority granted to it in R.C. 1531.13.
{¶ 25} The dissent asserts that R.C. 1531.201 permits a double recovery, which violates the Double Jeopardy Clause. Regardless of the merits of this assertion, it is not properly before this court. Risner’s complaint raises only the following constitutional challenges: equal protection, due process, right to trial by a jury, separation of powers, right to an open court, and right to a remedy. In his motion for summary judgment, Risner argued that R.C. 1531.201 was unconstitutional because it violated the right to trial by jury, Article I, Section 5, Ohio Constitution; the right to redress in courts, Article 1, Section 16, Ohio Constitution; and equal protection, Article 1, Section 2, Ohio Constitution. In this appeal, Risner’s proposition of law focuses on the statutory interpretation of R.C. 1531.201, not on constitutional challenges.
{¶ 26} We recently reaffirmed that “ ‘an appellate court will not consider any error which counsel for a party complaining of the trial court’s judgment could have called but did not call to the trial court’s attention at a time when such error could have been avoided or corrected by the trial court.’ ” State v. Quarterman, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting State v. Childs, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Therefore, by failing to raise the double-jeopardy challenge in the trial court, Risner has forfeited that issue on appeal. See Quarterman, ¶ 15.
{¶ 27} It is, however, within this court’s discretion to consider a forfeited constitutional challenge and review the trial court’s decision for plain error. Id. at ¶ 16. An appellate court “must proceed with the utmost caution” in applying the doctrine of plain error in a civil case. Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Plain error should be strictly limited “to the extremely rare case involving exceptional circumstances when the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself.” (Emphasis sic.) Id. at 122. The burden of demonstrating plain error rests with Risner. State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17. Risner has not shown that this is an error that challenges the legitimacy of the underlying judicial process, requiring the application of the plain-error doctrine.
{¶ 28} We would also do a disservice to the litigants and the trial court by considering this issue in this appeal. As stated, Risner did not raise a double-jeopardy claim at any time in the course of this litigation. We “should be *286 hesitant to decide such matters for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.” Sizemore v. Smith, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2. To echo the Quarterman court, “[w]e are not obligated to search the record or formulate legal arguments on behalf of the parties, because ‘ “appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.” ’ ” Quarterman, ¶ 19, quoting State v. Bodyke, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O’Donnell, J., concurring in part and dissenting in part), quoting Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983).
{¶ 29} Furthermore, we have stated that a court should avoid reaching constitutional issues if a case can be decided on other grounds. In re Miller, 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (1992). This is exactly what the trial court did; it decided, based on statutory-interpretation principles, that the plain language of R.C. 1531.201 prevented ODNR from seeking restitution. Having now concluded otherwise, we should provide the trial court with the opportunity to examine the constitutional issues that Risner has properly raised and that were not previously considered.
{¶ 30} Accordingly, these issues remain for resolution by the trial court.
III. Conclusion
{¶ 31} R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though it had seized the deer’s meat and antlers as evidence during the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. The judgment of the court of appeals is affirmed.
Judgment affirmed.
O’Connor, C.J., and Pfeifer and French, JJ., concur.
O’Donnell, Lanzinger, and O’Neill, JJ., dissent.
O’Donnell, J.,